UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TODD RIDDLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:06-cv-289-JDT-TAB |
| ) | |
| BED, BATH & BEYOND, INC., ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. #33)**[1]

Plaintiff, Todd Riddle, brings suit against his employer, Bed, Bath & Beyond, Inc. ("BB&B"), claiming that he has been refused promotion to a store manager position because he is HIV positive and that he was demoted in retaliation for complaining of discrimination. BB&B has filed a motion seeking entry of summary judgment in its favor. It maintains that Riddle has not put forth sufficient evidence to support a prima facie claim of discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12112, and has no evidence that the reasons given by it for not promoting him are a pretext for discrimination. Further, BB&B contends that Riddle was not demoted after complaining of discrimination, rather a payroll change which occurred subsequent to the complaint was an anticipated change which was already in process before he raised the issue of discrimination. In short, BB&B claims that any actions it took were for legitimate reasons.

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

### I.     *Summary Judgment Standard*

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Id.* at 255.

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A party moving for summary judgment on a claim on which the nonmovant party bears the burden of proof at trial may discharge its burden by showing, "that is, pointing out," an absence of evidence to support the nonmovant's case. *Id.* at 325.

### II.     *Factual Background*

Riddle began working for BB&B in September of 2002, as a department manager at its store at Keystone at the Crossing in Indianapolis. He had a year and a half of experience in retail with The Walking Company and Petsmart, when he was approached to join BB&B's retail management team by Chris Arguello, a BB&B Human Resources

manager. Riddle handled a customer service problem for Arguello at a Petsmart store in such a manner that impressed Arguello and caused him to inquire wheter Riddle might consider joining BB&B. At the time he was hired, he was told that he could expect an opportunity to manage his own store within a year.

The lowest level of retail management with BB&B is a store level department manager. The next step on the management ladder is to become one of the assistant managers at a store (also referred to at BB&B as key-holder positions) and then on to a store manager spot. BB&B promotes from within to fill store manager and assistant manager positions. Assistant managers often have specific merchandise areas they are to focus on. Stores are grouped in districts and districts are grouped in regions, with respective managers for both.

In April of 2003, Riddle was promoted to assistant store manager and assigned to the BB&B store in Avon, Indiana. In August of 2003 he was transferred to the Westfield, Indiana, store. In July 2004, Riddle was transferred back to the Keystone store as an assistant manager. Sometime in early 2005, Riddle was informed that he had been chosen to head up the new fine china department at the Keystone store, the first of its kind in the district and one of only a limited number in the region. When presented with the idea of overseeing this new department, Riddle was initially disappointed and indicated that he still wanted to be promoted to a store manager. He asked if he had any choice in the matter and was told that he did not. However, with encouragement and suggestions that good performance while operating this new "store within a store" might lead to a store manager job, he grew to accept the move as an

opportunity to show his ability to get a new merchandise line off to a good start. After the transfer, he continued to be coded for payroll as an assistant manager for several weeks, but was later shifted to what BB&B describes as a coefficient department manager. While he was generally assured of making at least as much money as he did as an assistant manager, of which he was one of the highest paid in the district, as a department manager he was no longer in the immediate succession line for a store manager position, because those positions are filled from the ranks of assistant managers. Riddle says he was never told that the move to the fine china department would entail what he describes as a demotion back to department manager.

Riddle is HIV positive, and has been for as long as he has worked at BB&B. However, he did not make anyone at BB&B aware of his HIV status until sometime in 2004, when he first informed some co-workers and then also told Arguello. Though he asked Arguello not to inform anyone else, Arguello told Martin Chatlos. Martin Chatlos has been the district manager over the Indianapolis area stores at all relevant times and, in fact, interviewed Riddle before he was hired. Others who had management responsibilities which affected Riddle include Jennifer Abell, who became District Human Resources Manager in June of 2005, and the Regional Vice-President, Fran Garrity. In addition to Garrity and Abell, who teamed with Chatlos in managing store personnel in the district, Art Goodman is the Regional Human Resources Director, and interacts with Chatlos on HR issues as well.

Generally, in addition to day to day feed-back, department managers and assistant managers receive performance evaluations annually, sometime around their anniversary date. Chatlos has a goal of signing off on all evaluations of employees in his district. The higher up an employee is in the district organization, the more input Chatlos has with regard to the employee's evaluation. Garrity must be consulted by Chatlos before any employee is made a store manager. Unfortunately, the record is rather sparse and ill-defined with regard to Riddle's performance evaluations.[2] He was never promoted to store manager, and it is undisputed that Chatlos has consistently expressed an unfavorable view with respect to Riddle's inability to accept criticism. However, it is also undisputed that Riddle is one of the highest paid department managers in the district, making more money than many store managers and assistant store managers. Chatlos credited Riddle with doing a "generally" good job while at the Avon and Westfield stores, and admits Riddle has lead the new fine china department and the bridal registry at the Keystone store to operate as one of the most successful in

---

[2] Evidently, BB&B has its employees complete a "self evaluation" form and then their superiors either complete an identical form or mark on the employee's self evaluation where they disagree with the employees' self-assessment. Some supervisors provided additional narrative remarks, addressing more specific points of evaluation, either on the evaluation form or through an attachment. As best as can be pieced together by the court, the only evaluations of Riddle which have been submitted as a part of the record here include: (1) a two-page undated evaluation which bears a facsimile transmission date of March 17, 2004, and which lists five evaluation categories and six to twelve subcategories under which Riddle was given mostly "good" ratings, the middle rating in an "excellent" to "unacceptable" range; (2) a duplicate second page from the first mentioned evaluation with a handwritten note from Riddle which states: "I was told by Michael Mc(illegible) he was going to revise this after our discussion on 4/22/04."; (3) a two-page self evaluation form completed by Riddle and dated July 25, 2006, which sets forth "excellent" marks in nearly every category; and, (4) a two-page evaluation form, dated August 8, 2006, and signed by Riddle and his store manager, which sets forth better than average ratings and has two pages of detailed comments attached.

the entire BB&B store roster. But Chatlos has also been critical of how Riddle interacts with others at the stores.

Riddle has pursued a store manager position since starting at BB&B. He has voiced his disappointment in not receiving one to Chatlos and others on several occasions. According to Riddle, Chatlos treated him less favorably after learning of riddle's positive HIV status and, despite his solid past performance, any hope he had of receiving a promotion to store manager disappeared. In early September 2005, shortly after being transferred to the fine china department, Riddle complained to Jennifer Abell, in Human Resources. He told Abell that he believed that Chatlos, who along with Garrity had chosen Riddle for the fine china assignment, was treating him poorly, including not giving him an annual raise in August of 2005. Riddle said he thought the poor treatment was because the district manager had learned of Riddle's HIV positive status. Riddle also told her that he believed Chatlos would retaliate against him if he found out that he was complaining. At the time he complained to Abell, Riddle was still coded and being paid as an assistant manager. He later was recoded (as discussed below) by payroll and BB&B says that this allowed him to make more money in lieu of a raise. He did receive an increase to his base salary in 2006.

After he spoke with her in September of 2005, Abell approached Art Goodman and then Chatlos with Riddle's complaint. On September 25, 2005, Riddle's payroll status was shifted from that of an assistant manager to a coefficient department manager. To Riddle, this was the retaliation he feared and a follow-up to the discriminatory failure to promote him to store manager. However, BB&B claims that the

-6-

move to coefficient status on the payroll was actually financially beneficial to Riddle insofar as it allowed him to earn significant pay above his base salary for extra hours worked. Indeed, the evidence supports a conclusion that Riddle has been paid more as a coefficient department manager then he would have been paid had he remained an assistant manager. If a coefficient manager works enough hours, he is entitled to money above his base salary. It takes more hours for an assistant manager to earn additional pay beyond his base salary.

BB&B also claims that the move to coefficient department manager status was a ministerial payroll process that was a part of the job transfer, but simply took several weeks to process, leaving Riddle as an assistant manager on the payroll for several weeks longer than he actually served in that capacity. As for its reasons for not giving Riddle a store to manage, BB&B states that he doesn't exhibit all the qualities they look for in a store manager. Most specifically, he does not take criticism well and does not treat everyone he works with well.

### III.    Discussion

#### A.    Proof Requirements

A plaintiff may demonstrate intentional discrimination through either the direct method or indirect method. *Steinhauer v. DeGolier*, 359 F.3d 481, 483 (7th Cir. 2004) (citing *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)). The direct method of proof permits a plaintiff to show, by way of direct or circumstantial evidence, that the adverse job action taken against him was motivated by an impermissible purpose, such

as disability discrimination or retaliation for complaining of such discrimination, as alleged in this case. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citing *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998)); see also *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 503 (7th Cir. 2004). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rhodes*, 359 F.3d at 504 (internal quotations and citations omitted). If, under the direct method of proving discrimination, a plaintiff relies on circumstantial evidence to support his claim, the evidence "must point directly to a discriminatory reason for the employer's action." *Rhodes*, 359 F.3d at 504 (citing *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)).

A plaintiff who lacks sufficient evidence to prove discrimination directly must proceed under the indirect method, familiarly known as the *McDonnell Douglas* burden-shifting test. *Id.* "If the plaintiff establishes a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for its employment action, and in response the plaintiff must prove that the employer's proffered non-discriminatory reason is a pretext for discrimination." *Rhodes*, 359 F.3d at 504 (citing *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002)). Riddle asserts that he is pursuing his claims under the indirect method.

To make a prima facie case of disability discrimination at the summary judgment phase, a plaintiff must offer evidence that: 1) he is disabled within the meaning of the ADA, 2) he was meeting his employer's legitimate employment expectations, 3) he was subject to an adverse employment action, and 4) similarly situated employees received

more favorable treatment. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007). When, as here, the employer is alleged to have violated federal anti-discrimination laws by failing to promote an individual, the four elements a plaintiff is required to establish are: (1) his membership in a protected group; (2) he applied and was qualified for a particular position; (3) he was not awarded the position sought; and, (4) those who were promoted had similar or lesser qualifications. *Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997).

With respect to Riddle's claim of retaliation, his prima facie case must consist of evidence that after engaging in protected activity such as complaining of discrimination to his employer, he was subjected to an adverse employment action even though he was performing his job satisfactorily, and no similarly situated employee who had not complained was subjected to the adverse action. *Cassimy v. Bd. of Educ. of Rockford Pub. Schs., Dist. #205*, 461 F.3d 932, 938 (7th Cir. 2006). BB&B contends that both the discrimination claim and the retaliation claim fail because Riddle was not subjected to an adverse employment action, he was not meeting management's expectations because he failed to demonstrate the characteristics necessary to be a good store manager, and he has not shown that similarly situated individuals were treated more favorably.

### B. *Riddle's Discrimination Claim*

In addition to his claim of discriminatory failure to promote, Plaintiff's complaint alleges discrimination with respect to the lack of a pay raise in 2005 and the "demotion"

to a position with less responsibility and pay.  However, the facts do not support either of the latter contentions and Riddle fails to assert or otherwise address such a claim in his brief in response to Defendant's summary judgment motion.  Accordingly, the court deems any claim of discrimination other than discrimination in connection with the failure to promote as abandoned.  *See Palmer v. Marion County,* 327 F.3d 588, 598-99 (7th Cir. 2003).

Turning to Plaintiff's contention that BB&B discriminated against him because it failed to promote him to store manager, the court is left with a record which is less than sufficient to allow Riddle to continue to pursue the claim.  Riddle has made of record a response to interrogatories from BB&B which lists assistant managers who received appointments to store manager in Chatlos' district since the beginning of 2003.  Riddle also submits a copy of a single BB&B performance evaluation for four of the promoted assistant managers, which he says shows that they received similar marks and criticisms in areas which BB&B says he is lacking.  However, the evaluations of these employees are for time periods after they obtained store manager positions and no attempt has been made to provide evidence that would support a comparison at the relevant time of promotion.  Nor is it clear when that time was.  There is no evidence of record to help answer the questions of what promotion is at issue here, how one applied for the promotion (though the court assumes that BB&B has always known of Riddle's ambition to become a store manager), when it was available, who got each particular promotion or how the candidates were being evaluated at the time.  To the extent

Riddle claims he is currently entitled to a promotion, there is no evidence that a store manager position is even available.

The fact which serves to clinch the issue of failure to promote in favor of the Defendant is the lack of any evidence that would conflict with Chatlos having been constant and consistent with his criticism of Riddle for his failure to accept criticism and his lack of certain interpersonal skills. Such criticism began long before Chotlos knew of Riddle's HIV positive status. BB&B has articulated its nondiscriminatory reason for not promoting Riddle as his failure to exhibit certain interpersonal skills and characteristics which Chatlos and the company find necessary to perform well as a store manager. There is no evidence of statements, notes, or other communication by any decision-maker that would suggest that Riddle's HIV status contributed to any analysis of his performance or any other decision with regard to his career direction. While Riddle's own self-evaluation serves as little, if any, help for his own case, *see Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 980 (7th Cir. 2004), a review of his comments on the evaluation form does tend to support the notion that a supervisor might find Riddle's approach to a critical performance analysis more than a bit defensive. In any event, it has often been said that federal courts do not sit as super personnel boards, evaluating the quality of personnel decisions, *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 922 (7th Cir. 2007), and without more from the Plaintiff in this case, there is nothing of record which would support a conclusion that BB&B is lying about its reasons for not promoting Riddle.

C.     *Riddle's Retaliation Claim*

Support in the evidentiary record for Riddle's retaliation claim is more abundant. There is no question that early in September of 2005, Riddle complained about Chotlos and what he perceived as Chotlos' discriminatory actions against him. At that time, Riddle had already taken over the fine china department at the Keystone store, but remained paid and "coded" as an assistant manager. There is also no question that approximately two weeks following his complaint, Riddle's position was "recoded" to a coefficient department manager, and he was then paid in that fashion going forward. The Keystone store was allowed up to five assistant managers, which are also referred to as keyholder positions, but even though Riddle was allowed to keep his keys to the store, he was relegated to department manager status and required to complete time sheets. He asserts and has submitted evidence to support the contention that not all fine china managers are recoded to department manager status. In Detroit, a store within Garrity's region, the person managing the fine china department has been allowed to keep his assistant manager status. Finally, after Riddle complained, Chotlos put "help wanted" signs in his district's stores, advertising for fine china sales associates and a fine china department manager. The significance of this, though small, is that Riddle was managing the only fine china department in the district and no new ones were in the process of being added in other district stores. So, while everyone admits he was delivering strong results in that department, the district manager is placing signs in stores that suggest Riddle might be replaced.

BB&B argues first that Riddle can not make his retaliation claim stick because he did not suffer an adverse action. The company asserts that since he made more money after being recoded to department manager, Riddle was not treated adversely. However, that argument is easily disposed of, because it is undisputed that promotions to store managers at BB&B go to those in the assistant manager ranks, not department managers. Job transfers can still be adverse employment actions even if the pay remains the same or is greater, so long as some material diminution of responsibilities or benefits can be demonstrated. *Tart v. Ill. Power Co.,* 366 F.3d 461, 476 (7th Cir. 2004); *see also Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 650-51 (7th Cir. 2001) ("lateral move" still found to be an adverse employment action due to diminished responsibilities, despite same salary, job title and benefits). In short, Riddle suffered an adverse employment action because he would have to move back through the assistant manager stage again in order to become a store manager.

Next, BB&B contends that Riddle was not meeting its expectations with respect to demonstrating the characteristics necessary to manage a store. The court assumes this argument was intended to address the failure to promote claim, because it is undisputed that he was achieving some of the best results in the nation in his fine china department and the company's expectations with regard to his demonstrating store manager potential is no more relevant to the retaliation inquiry then whether he was demonstrating the characteristics necessary to chair the board. By Chotlos' own admission, Riddle was performing well at the job he was holding at the time of the alleged retaliation. Defendant's argument that Plaintiff has failed to establish that

someone similarly situated was treated more favorably fails as well, because another assistant store manager in Detroit has been allowed to retain that status and still be responsible for managing the store's fine china department.

With a prima facie case of retaliation established, it becomes the responsibility of BB&B to articulate a legitimate reason for its actions and, as mentioned previously, it has done that by explaining that the recoding, or demotion as Riddle insists, was a ministerial payroll matter that was not triggered by Riddle's complaint of discrimination. Rather, the recoding was intended to occur from the start, effective contemporaneous with the move to the fine china department. However, it took longer for that last step in the process to be accomplished than intended.

Riddle says that this is a pretext for discrimination and that the fact that the recoding occurred only two weeks from his complaint is telling. BB&B correctly contends that suspicious timing alone does not create a question of fact. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758-59 (7th Cir. 2006). Nevertheless, Riddle has slightly more than just suspicious timing here, and BB&B's explanation requires the court to accept little more than an offering of coincidence as an explanation. The additional evidence Plaintiff offers includes the fact that another assistant manager has kept his status and title after being assigned to manage fine china. He also points to the sudden placement of "help wanted" signs in district stores, which he suggests were meant to intimidate or embarrass him. Riddle also relies on his own testimony regarding the demeanor and tenor of his superiors following his complaint of

discrimination and the failure of BB&B to inform him of any change in payroll coding or title before the move to fine china occurred.

While far from overwhelming, Riddle has put forth enough evidence to cast some doubt upon the expressed reason for recoding him to coefficient department manager and keep a summary judgment at bay with respect to his retaliation claim.[3]  At the summary judgment stage, a plaintiff need not meet the quantity of evidence provided by the defendant, nor even persuade the court that his case is convincing, he need only come forward with appropriate evidence to demonstrate the existence of a material question of fact.  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

### IV.    *Conclusion*

Evidence of discrimination based upon Riddle's HIV positive status is wholly lacking here and federal court is not a place to try to hash out whether business decisions, such as who to make a store manager, are correct or fair.  Riddle was consistently criticized for certain perceived weaknesses even before he let his HIV status be known.  Therefore, summary judgment is appropriate with regard to his discrimination claim and the Defendant's Motion for Summary Judgment (Doc. # 33) will

---

[3]  Riddle may be vexed by the old saying "be careful what you ask for, you just might get it."  With no failure to promote claim remaining, the equitable relief for his retaliation claim would seem to be his being placed back into an assistant manager position.  The evidence of record submitted by BB&B demonstrates that from a pure financial standpoint, if he works the same hours as he has as department manager, that position is less attractive.  Unless the record is supplemented at trial, there would seem to be no back pay issues.

be **GRANTED** as to that claim. That judgment will not be entered, though, until disposition of the retaliation claim.

Riddle's retaliation claim survives. While his evidence is sparse, it is enough to raise a material question of fact. Accordingly, summary judgment is not appropriate with respect to his retaliation claim, which shall move forward to trial.

ALL OF WHICH IS ENTERED this 31st day of May 2007.

John Daniel Tinder, Judge
United States District Court

Copies to:

Carolyn Ann Clay
HASKIN LAUTER LARUE & GIBBONS
cclay@hlllaw.com

Emery King Harlan
GONZALEZ SAGGIO HARLAN
emery_harlan@gshllp.com

John H. Haskin
HASKIN LAUTER LARUE & GIBBONS
jhaskin@hlllaw.com

Alejandro Valle
GONZALEZ SAGGIO & HARLAN LLP
alejandro_valle@gshllp.com

Magistrate Judge Tim A. Baker